CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
AUG 29 2017
JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Danville Division)

ANGELA L. G. WEINERTH
        Plaintiff,

v.                                   Civil Action No.   4:17CV00067

ZEBEDEE TALLEY, JR.,

and

JOAN MONTGOMERY

and

LAWRENCE MITCHELL

and

VICTOR CORREA

and

ERIC HRUZA

and

THE MARTINSVILLE CITY SCHOOL BOARD

and

DANNY TURNER

and

JENNIFER BOWLES

and

SHARON HODGE

and

GENE TEAGUE

and

MARK STROUD

and

THE MARTINSVILLE CITY COUNCIL

and

CITY OF MARTINSVILLE, VIRGINIA,
A Municipal Corporation

Serve ALL DEFENDANTS:
c/o Eric Monday, City Attorney
55 W. Church Street
Martinsville, Virginia 24112

                        Defendants.

## COMPLAINT

### I. INTRODUCTION

1. This Complaint is brought by Angela L. G. Weinerth to seek recompense due to the intentional and unlawful actions by the defendants, individually and collectively, in discriminating against her in employment on account of her race, sex and age.

2. More specifically, the City of Martinsville Virginia, acting through its City Council and its City Council appointed School Board, instituted a policy to employ administrators and educators in its public schools system on the basis of race, sex, and age, for the explicit purpose of having those administrators and educators "look" like the racial and sexual composition of the students. The implementation of this policy served to unlawfully discriminate against administrators and educators who did not "look" like the racial, sexual and age composition of the students, including plaintiff Angela Weinerth.

3. Indeed, the City of Martinsville, Virginia, its City Council, its School Board, and the individual defendants, acting individually and collectively, conspired and acted, under color of law, to deprive Angela Weinerth of her civil rights as provided by the United States Constitution,

Amendment XIV, the Civil Rights Act of 1964, Title VII, and the federal Age Discrimination In Employment Act of 1967 (as amended).

## II. THE PARTIES

4. Angela Weinerth is a Virginia resident who served as principal of Martinsville High School from 2013 to 2016. Angela Weinerth is a white female, who is sixty-three (63) years old.

5. The Martinsville, Virginia City Council ("City Council") is the governing board responsible for the governance, supervision and management of all governmental powers ceded to it via the City Charter, including, but not limited to, the establishment, organization and administration of the City's public schools system. The City Council interviews, chooses and appoints the Martinsville, Virginia City School Board's ("School Board") members. Moreover, upon information and belief, the City Council exercises its powers granted under its City Charter to supervise the School Board, to offer input, and to direct the administration and organization of its public schools system.

6. The School Board is a governmental entity responsible for the supervision and management of the Martinsville, Virginia City Schools division. The School Board members are interviewed, chosen and appointed by the City Council, as noted in paragraph 5, *supra*.

7. The School Board and the following individual defendants identified in paragraphs 8-12, *infra*, who serve or served as either an employee of the School Board, or a member of the School Board, are collectively referred to as the "School Board Defendants".

8. Zebedee Talley, Jr. is a Virginia resident who currently serves as the Superintendent of the Martinsville, Virginia public schools system. Dr. Talley is a black male.

9. Joan Montgomery is a Virginia resident who serves, and served at all times relevant to the claims presented in this Complaint, as the Chairman of the School Board.

10. Laurence Mitchell is a Virginia resident who served at all times relevant to the claims presented in this Complaint, as a member of the School Board. Mr. Mitchell recently resigned from the School Board due to "micromanagement" by the City Council in the administration and operation of the Martinsville, Virginia public schools system.

11. Victor Correa is a Virginia resident who served at all times relevant to the claims presented in this Complaint, as a member of the School Board.

12. Eric Hruza is a Virginia resident who serves, and served at all times relevant to the claims presented in this Complaint, as a member of the School Board.

13. The City of Martinsville, Virginia, the City Council and the following individual defendants identified in paragraphs 14-18, *infra*, who serve or served as a member of the City Council, are collectively referred to herein as the "City Council Defendants."

14. Danny Turner is a Virginia resident who served at all times relevant to the claims presented in this Complaint, on the City Council.

15. Jennifer Bowles is a Virginia resident who serves, and served at all times relevant to the claims presented in this Complaint, on the City Council.

16. Sharon Hodge is a Virginia resident who serves, and served at all times relevant to the claims presented in this Complaint, on the City Council.

17. Gene Teague is a Virginia resident who serves, and served at all times relevant to the claims presented in this Complaint, on the City Council.

18. Mark Stroud is a Virginia resident who served at all times relevant to the claims presented in this Complaint, on the City Council.

### III. JURISDICTION AND VENUE

19. This Court maintains subject matter jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§1331 and 1343.

20. Angela Weinerth properly and timely filed Discrimination Charges against the defendants with the federal Equal Employment Opportunity Commission ("EEOC") as to her claims that the defendants violated federal law. The federal Department of Justice provided Angela Weinerth a Notice of Right to Sue. Angela Weinerth timely filed this Complaint within ninety (90) days of receiving the Notice of Right to Sue.

21. This Court maintains personal jurisdiction over the parties, as all the parties reside within the Commonwealth of Virginia.

22. Venue is proper in this division as the acts and omissions complained of occurred in the City of Martinsville, Virginia.

### IV. THE FACTS

23. Angela Weinerth is an educator with almost forty (40) years of experience as a teacher and administrator in the Commonwealth of Virginia.

24. Angela Weinerth became employed by the Martinsville, Virginia City School System in 2005, teaching in the scholars' program at the Martinsville Middle School.

25. Angela Weinerth was appointed Assistant Principal at Martinsville High School (MHS) in 2012.

26. The MHS principal in 2012 was Mr. Aji Dixon. Mr. Dixon was appointed MHS principal in 2011.

27. As an MHS Assistant Principal, Angela Weinerth tried to alert Principal Dixon to the data indicating that MHS students were falling behind under the Commonwealth's Education

Board's standards, and of the consequences to the students and to the school if there were no improvements in performance. Principal Dixon dismissed Angela Weinerth's information and warnings, instructing her to "back off".

28. Angela Weinerth repeated her warnings later in the academic year, informing Principal Dixon that MHS was risking its accreditation, and the possibility of the Commonwealth's Education Board intervening. Principal Dixon called Angela Weinerth a "bulldog" and lunged over his desk at her, physically threatening her.

29. The School Board, acting through its Superintendent, removed Principal Dixon from his position at MHS in 2013, and reassigned him to an administrative position at the School Board's headquarters. Upon information and belief, Principal Dixon's removal was due to his incompetence as Principal, and an inability to competently guide MHS to full accreditation by the Commonwealth's Education Board.

30. The School Board, acting through its Superintendent, Pamela Heath, appointed Angela Weinerth as Principal of MHS, in the stead of Mr. Dixon.

31. Angela Weinerth, as MHS Principal, immediately undertook actions to reverse Mr. Dixon's failing policies of neglect, and to address the academic needs of the students. Better relationships with administrators, teachers and students ensued, as each were made to understand the need for their participation in the school's programs in order to ensure their ultimate success.

32. During Principal Weinerth's tenure, discipline among students improved, and steps were taken to provide more particularized instruction, based upon student needs.

33. During Principal Weinerth's tenure, steady progress was made by MHS toward achieving accreditation by the Commonwealth's Education Board.

34. Following the retirement of School Superintendent Pamela Heath, the School Board named Dr. Zebedee Talley Interim Superintendent.

35. Upon assuming the office of Interim Superintendent, Dr. Talley began instituting a personnel policy based upon race, sex and age.

36. More than fifty percent (50%) of the Martinsville public schools system's student population are minorities.

37. More than seventy percent (70%) of MHS students are minorities. More than 50% of MHS students are male.

38. The School Board and its Interim Superintendent, Dr. Talley, expressed concerns that more than 70% of the School System's staff were white. It was the expressed belief of the School Board and Dr. Talley that a "more diverse staff" was necessary for student success. By "diverse" the School Board and Dr. Talley were referring to a human's immutable characteristics such as race and sex.

39. "Minority students do better and do well when they have people in authority who look like them" stated Dr. Talley. According to Dr. Talley, ". . . it's good to have a classroom and a school that represents the demographics . . . ."

40. School Board member Victor Correa stated "I think this community [Martinsville] has a very large Africa[n] American community, and there has been a large request from parents for more African American teachers. In order for the students to have a more comfortable learning environment, I think it's important to the students to have a teacher that looks like them."

41. Victor Correa specifically stated that he wished to see more black teachers in the public schools system.

42. Though the statements of Dr. Talley and Victor Correa were known publicly, no City Council member denounced those statements. No City Council member questioned those statements. Indeed, by their silence, and by virtue of their subsequent actions, the City Council Defendants adopted and ratified those statements and that personnel policy in the public schools system.

43. Similarly, though the statements of Dr. Talley and Victor Correa were known publicly, no School Board member denounced those statements. No School Board member questioned those statements. Indeed, by their silence, and by virtue of their subsequent actions, the School Board adopted and ratified those statements and that personnel policy in the public schools system.

44. On July 22, 2016, Dr. Talley telephoned Angela Weinerth and inquired as to how many black teachers were employed at MHS. Angela Weinerth informed Dr. Talley that she did not know off the top of her head. Angela Weinerth further informed Dr. Talley that 1) she did not hire teachers based upon race or sex; 2) she hired teachers based upon their ability to perform their jobs; and, 3) employment applications at MHS did not ask applicants about their race or sex.

45. In response to Angela Weinerth's answers to his questions about MHS employment, Dr. Talley directed her to count the number of MHS teachers by race and report back to him.

46. On July 26, 2016, Dr. Talley met with Angela Weinerth. Dr. Talley informed Angela Weinerth that he was removing her as MHS Principal, and demoting her to Assistant Principal at Martinsville Middle School. When Angela Weinerth inquired as to the reason for her demotion, Dr. Talley replied that "the community had spoken." When Angela Weinerth reminded Dr. Talley of all the progress and strides that had occurred under her leadership, Dr. Talley became

angry and threatened to demote her further and to place her in a teaching position in the Martinsville Middle School.

47. Upon dismissing Angela Weinerth, Dr. Talley promoted Mr. Aji Dixon to MHS principal and Mr. Clarence Simington to assistant principal.

48. Angela Weinerth is a white female. She is sixty-three (63) years old.

49. Aji Dixon is a black male. Upon information and belief, he is thirty-six (36) years old.

50. Clarence Simington is a black male.

## V. CAUSES OF ACTION

### Count I (All Defendants)
### (Discrimination In Employment Based Upon Race, Sex And Age)

51. Angela Weinerth incorporates and repeats the allegations set forth in paragraphs 1-50.

52. Angela Weinerth was, and is, a qualified and competent person to serve as MHS principal.

53. Dr. Talley demoted and reassigned Angela Weinerth from her position as MHS Principal because she did not "look" like the student body or the community at large. Dr. Talley determined that because Angela Weinerth was not a young black male, she was not qualified to be the principal of a public high school with a majority student body of young, black males.

54. Dr. Talley's decision and action reassigning and demoting Angela Weinerth was based solely upon her race, sex and age. His decision and action constituted illegal discrimination under federal law.

55. Dr. Talley promoted Aji Dixon to the position of MHS principal, in the stead of Angela Weinerth.

56. Aji Dixon is not qualified to be MHS principal. Indeed, upon information and belief, Aji Dixon's sole qualifications to be MHS Principal are that he is a young, black male who "looks"

like the majority of the student body and the community at large, in accordance with Dr. Talley's publicly stated personnel policy.

57. The School Board Defendants knew of and approved of Dr. Talley's publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed]" like the student body and the community at large.

58. The City Council Defendants knew of and approved of Dr. Talley's publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed]" like the student body and the community at large.

59. The School Board Defendants, individually and collectively, voiced no opposition to Dr. Talley's publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed]" like the student body and the community at large. Indeed, in spite of Dr. Talley's publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed] like the student body and the community at large, the School Board promoted Dr. Talley, hiring him as the permanent public schools system's Superintendent.

60. The City Council Defendants, individually and collectively, voiced no opposition to Dr. Talley's publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed]" like the student body and the community at large. Indeed, in spite of Dr. Talley's publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed] like the student body and the community at large, the City Council Defendants, through their actions and omissions, ratified the School Board's promotion of Dr. Talley to be the permanent public schools system's Superintendent.

61. The School Board Defendants, individually and collectively, maintain a duty to administer and operate the Martinsville, Virginia public schools system in accordance with all federal, state and local laws.

62. The City Council Defendants, individually and collectively, maintain a duty to administer and operate the public schools system in accordance with all federal, state and local laws.

63. Dr. Talley's publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed]" like the student body and the community at large violates federal laws pertaining to employment discrimination, as well as the Constitution of the United States.

64. The School Board Defendants, individually and collectively, by their acts and omissions, have adopted and ratified Dr. Talley's illegal, unconstitutional and publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed]" like the student body and the community at large.

65. The City Council Defendants, individually and collectively, by their acts and omissions, have adopted and ratified Dr. Talley's illegal, unconstitutional and publicly stated personnel policy of hiring and promoting administrators and educators who "look[ed]" like the student body and the community at large.

66. Dr. Talley, by demoting Angela Weinerth solely upon the bases of her age, race and sex, violated her civil rights as provided by the United States Constitution, Amendment XIV, The Civil Rights Act of 1964, Title VII, and the federal Age Discrimination In Employment Act Of 1967 (as amended), in violation of the provisions of 42 U.S.C. §1983.

67. The School Board Defendants, individually and collectively, by condoning and ratifying Dr. Talley's demotion of Angela Weinerth solely upon the bases of her age, race and sex, violated her civil rights as provided by the United States Constitution, Amendment XIV, The

Civil Rights Act of 1964, Title VII, and the federal Age Discrimination In Employment Act Of 1967 (as amended), in violation of the provisions of 42 U.S.C. §1983.

68. The City Council Defendants, individually and collectively, by condoning and ratifying Dr. Talley's demotion of Angela Weinerth solely upon the bases of her age, race and sex, violated her civil rights as provided by the United States Constitution, Amendment XIV, The Civil Rights Act of 1964, Title VII, and the federal Age Discrimination In Employment Act Of 1967 (as amended), in violation of the provisions of 42 U.S.C. §1983.

69. As a direct and proximate result of the defendants' actions, individually and collectively, as outlined in this Complaint, Angela Weinerth has suffered damages.

## Count II (All Defendants)
### (Conspiracy To Deprive Angela Weinerth And Others Of Their Civil Rights)

70. Angela Weinerth incorporates and repeats the allegations set forth in paragraphs 1-50, and 52-69.

71. The School Board Defendants, individually and collectively, and the City Council Defendants, individually and collectively, all conspired, under color of law, to establish an official government policy for the Martinsville public schools system which would serve to deprive a specific class, or classes, of people of their civil rights, in violation of the United States Constitution, Amendment XIV, The Civil Rights Act of 1964, Title VII, and the federal Age Discrimination In Employment Act Of 1967 (as amended). This official government policy of the City of Martinsville, Virginia violates the United States Constitution, Amendments XIV, The Civil Rights Act of 1964, Title VII and the federal Age Discrimination In Employment Act Of 1967 (as amended). The defendants' conspiracy to establish this official government policy of the City of Martinsville, Virginia, violates the provisions of 42 U.S.C. §1985.

72. The School Board Defendants, individually and collectively, and the City Council Defendants, individually and collectively, all conspired, under color of law, to deprive Angela Weinerth of her civil rights as provided by the United States Constitution, Amendment XIV, The Civil Rights Act of 1964, Title VII, and the federal Age Discrimination in Employment Act of 1967 (as amended). The defendants' conspiracy violates the provisions of 42 U.S.C. §1985.

73. As a direct and proximate result of the defendants' actions, individually and collectively, as outlined in this Complaint, Angela Weinerth has suffered damages.

## VI. JURY DEMAND

Angela L. G. Weinerth demands a trial by jury on her Complaint.

## VII. PRAYER FOR RELIEF

Angela L. G. Weinerth, having fully plead her causes of action, prays for judgment, and relief as follows:

A. For judgment against all defendants, jointly and severally, on Counts I and II;

B. For injunctive relief against the enforcement and utilization of Martinsville, Virginia's public policy of employing racial, sex and age discrimination in its public schools system;

C. For reinstatement to her position as MHS principal;

D. For back pay and benefits in an amount not less than one hundred five thousand dollars ($105,000.00), in an amount to be determined at trial;

E. For prospective pay and benefits in an amount not less than four hundred forty-five thousand dollars ($445,000.00), in an amount to be determined at trial;

F. For non-economic damages in an amount not less than one million dollars ($1,000,000.00), in an amount to be determined at trial;

G. For punitive damages in an amount not less than eight million dollars ($8,000,000.00), in an amount to be determined at trial;

H. For Pre-judgment interest;

I. For her attorneys' fees and costs incurred in this matter; and,

J. For such other and further relief as may be available and justice may require.

*/s/ Glen Franklin Koontz*
Glen Franklin Koontz
Virginia State Bar #27935
KOONTZ | P.C.
A Professional Law Corporation
Post Office Box 1176
Berryville, Virginia 22611
540.277.2100
gfk@koontzpc.com

Attorney for Angela L.G. Weinerth

August 29, 2017