CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 0 6 2018
JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

ANGELA L. G. WEINERTH,  )
      )
  Plaintiff,  )
      )  Civil Action No. 4:17-CV-00067
v.  )
      )
      )  By: Hon. Michael F. Urbanski
ZEBEDEE TALLEY, JR., et al.,  )  Chief United States District Judge
      )
  Defendants.  )

## MEMORANDUM OPINION

In this employment action, plaintiff Angela L. G. Weinerth ("Weinerth") claims that she was removed from her position as principal of Martinsville High School because of her race, sex, and age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. Currently pending before the court is the Martinsville City School Board's ("School Board") motion to dismiss.[1] The matter has been fully briefed, and the court heard oral argument on May 11, 2018. For the reasons set forth below, the court **DENIES** the School Board's motion.

### I.

Weinerth is a white female over the age of 60. Am. Compl. ¶ 4, ECF No. 26. She has nearly 40 years of experience as a teacher and administrator in the Commonwealth of Virginia.

---

[1] Weinerth's amended complaint also named Zebedee Talley, Jr., the City of Martinsville, and the Martinsville City Council as defendants. On December 18, 2017, the parties stipulated to the dismissal of those three defendants, leaving the School Board as the only remaining defendant. ECF No. 39. The parties also stipulated to the dismissal of Counts IV and V of the amended complaint, in which Weinerth asserted that the defendants deprived and conspired to deprive her of her civil rights. Id.

Id. ¶ 16. Weinerth has worked for the Martinsville City Public Schools ("School System") since 2005, when she was hired to teach in the scholars' program at Martinsville Middle School. Id. ¶ 17.

In 2012, Weinerth was appointed to the position of assistant principal at Martinsville High School ("MHS"), where Aji Dixon ("Dixon"), a black male under the age of 40, had served as principal since 2011. Id. ¶¶ 18-19, 47. According to the amended complaint, Dixon's performance as principal was unsatisfactory. Id. ¶¶ 20-22. When Weinerth tried to warn him that MHS students were falling behind state standards and that the school's accreditation was at risk, Dixon dismissed her warnings and behaved in a physically threatening manner. Id. ¶ 21. In 2013, the School Board removed Dixon from his position at MHS and reassigned him to an administrative position at the School System's central office. Id. ¶ 22. Weinerth alleges, upon information and belief, that the decision was based on Dixon's "incompetence" and his "inability to competently guide MHS to full accreditation by the Commonwealth's Education Board." Id.

Weinerth was promoted to replace Dixon as principal. Weinerth alleges that the decision was made with the "expectation that she would act to reverse Principal Dixon's failing policies." Id. ¶ 23. Consequently, Weinerth took immediate actions to address the academic needs of the students and improve their performance. Id. ¶¶ 24-25. Under her leadership and direction, steady progress was made toward achieving accreditation from the state. Id. ¶¶ 25-26.

In 2016, the School Board appointed Zebedee Talley, Jr. ("Dr. Talley") to the position of interim superintendent, following the retirement of Pamela Heath. Id. ¶ 27. Weinerth

2

alleges that Dr. Talley immediately instituted a personnel policy that "put race, sex and age—immutable characteristics—above competence and ability," and that this policy was endorsed and approved by the School Board. Id. ¶ 28; see also id. ¶ 2 (alleging that the School Board "instituted an official policy to employ administrators and educators in its public school system on the basis of race, sex, and age, for the explicit purpose of having those administrators and educators 'look' like the racial and sexual composition of the students").

At the time of Dr. Talley's appointment, more than 50 percent of the School System's students were minorities. Id. ¶ 29. The percentage was even higher at MHS, where more than 70 percent of the students were minorities and more than 50 percent were male. Id. ¶ 30. Dr. Talley and the School Board voiced concern over the fact that more than 70 percent of the School System's employees were white. Id. ¶ 31. They also expressed the belief that "a 'more diverse staff' was necessary for student success." Id.; see also id. ¶ 32 ("'Minority students do better and do well when they have people in authority who look like them' stated Dr. Talley. According to Dr. Talley, '. . . it's good to have a classroom and a school that represents the demographics . . . .'"); Id. ¶ 33 ("School Board member Victor Correa stated 'I think this community [Martinsville] has a very large Africa[n] American community, and there has been a large request from parents for more African American teachers. In order for the students to have a more comfortable learning environment, I think it's important to the students to have a teacher that looks like them.'") (alterations in original).

On July 22, 2016, Dr. Talley contacted Weinerth by telephone and inquired as to how many black teachers were employed at MHS. Id. ¶ 40. In response, Weinerth indicated that "she did not know off the top of her head." Id. Weinerth also advised Dr. Talley that she

3

selected teachers based on ability, and that the school's employment application did not ask applicants about their race or sex. Id. Dr. Talley directed Weinerth to count the number of MHS teachers by race and report back to him. Id. ¶ 41.

Four days later, Dr. Talley informed Weinerth that he was removing her from her position as principal and "demoting" her to assistant principal at Martinsville Middle School. Id. ¶ 42. When Weinerth inquired as to the reason for the decision, "Dr. Talley replied that 'the community had spoken.'" Id.

Prior to demoting Weinerth, "Dr. Talley never reviewed her performance or suggested that she was not performing at a level compatible with the School Board's legitimate expectations." Id. ¶ 43. To the contrary, Weinerth alleges that she consistently performed at a level exceeding the School Board's legitimate expectations, and that she successfully implemented specific measures to "reverse Principal Dixon's failing policies" and "set the school and its students on the proper path to success." Id. ¶¶ 23, 24, 44. Nonetheless, upon her removal, Dr. Talley returned Dixon to the position of principal at MHS. Id. ¶ 45. Weinerth alleges that "Dixon was, and is, not qualified to be MHS principal," and that the decision was motivated by race, sex, and age. Id. ¶ 47.

Based on these and other allegations, Weinerth asserts claims of race and sex discrimination under Title VII (Counts I and II), and a claim of age discrimination under the ADEA (Count III). The School Board has moved to dismiss all three counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

4

## II.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

## III.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-1(a)(1). Similarly, the ADEA makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff can establish a claim of discrimination under Title VII or the ADEA either by presenting direct or circumstantial evidence of discriminatory animus, or by proceeding under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 249 (4th Cir.

2015) (Title VII); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004) (ADEA). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802. To do so, "the plaintiff must show that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by [a] similarly qualified [individual] outside the protected class." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (addressing claims of sex and age discrimination); see also Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing the same elements in evaluating a claim of race discrimination).[2]

In moving to dismiss Weinerth's claims under Title VII and the ADEA, the School Board advances two primary arguments. First, the School Board contends that a policy of

---

[2] The School Board proceeds under the assumption that the traditional McDonnell Douglas test applies to Weinerth's claim of race discrimination. See Def.'s Br. Supp. Mot. Dismiss 11, ECF No. 30 (citing Coleman, 626 F.3d at 190). "Although it is clear that Title VII's protection is not limited to those individuals who are members of historically or socially disfavored groups," the Supreme Court has not addressed whether the showing required to make out a prima facie case must be altered in a "reverse discrimination" case, where a member of a majority group claims discrimination. Notari v. Denver Water Dep't, 971 F.2d 585, 588 (10th Cir. 1992). Other circuits have split on the issue. See McNaught v. Va. Cmty. Coll. Sys., 933 F. Supp. 2d 804, 818-19 (E.D. Va. 2013) (discussing the circuit split and concluding that the standard McDonnell Douglas test applies in both ordinary and reverse discrimination cases). For the reasons discussed in McNaught, the court is of the opinion that the fact that Weinerth is not a member of a racial minority does not alter the analysis applicable to her claim of race discrimination. See Shomo v. Apple, Inc., No. 7:14CV00040, 2015 U.S. Dist. LEXIS 22499, at *8 n.3 (W.D. Va. Feb. 2, 2015), report and recommendation adopted, No. 7:14CV00040, 2015 U.S. Dist. LEXIS 21616 (W.D. Va. Feb. 24, 2015) (citing McNaught and electing to apply the standard McDonnell Douglas test). However, even if the court were to apply a heightened standard, it would not affect the outcome of the School Board's motion to dismiss. For the reasons discussed below, Weinerth has alleged "background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority." Parker v. Baltimore & Ohio R.R., 652 F.2d 1012, 1017 (D.C. Cir. 1981); see also Sampson v. Sec'y of Transp., No. 98-5669, 1999 U.S. App. LEXIS 14142, at *4 (6th Cir. 1999) (finding that the plaintiff satisfied the heightened "background circumstances" requirement by submitting evidence that the employer had policies reflecting "an organizational preference for establishing a diverse group of employees" and that the employer relied on such policies in promoting a black female instead of the plaintiff); Harding v. Gray, 9 F.3d 150, 153 (D.C. Cir. 1993) (holding that "the non-minority plaintiff who shows that he was better qualified for the position than the minority applicant whom the employer selected . . . has stated sufficient background circumstances to establish his prima facie case").

promoting diversity among its employees is neither discriminatory nor unlawful. Second, the School Board argues that the allegations in the amended complaint, particularly those made in support of Weinerth's claims of sex and age discrimination, do not satisfy the pleading standards established in Twombly and Iqbal. The court will address each argument in turn.

### A.

The School Board first argues that initiatives to increase diversity among the School System's administrators and educators are "in accord with public policy goals" and do not violate federal employment discrimination laws. Def.'s Br. Supp. Mot. Dismiss 7, ECF No. 30. The School Board emphasizes that it is authorized, by statute, to adopt employment policies that "effectively serve the educational needs of students," Va. Code § 22.1-295(B), and that a state task force has concluded that all students benefit from having teachers with diverse backgrounds. In response, Weinerth argues that hiring practices in all school systems must comply with federal employment laws, and that the statute cited by the School Board does not authorize a school system to engage in unlawful discrimination.

At this stage of the proceedings, the court finds the School Board's first argument unpersuasive. To be sure, courts have held that "the mere existence of a diversity policy, without more," is insufficient to make out a prima facie case of discrimination under federal employment statutes like Title VII. Jones v. Bernanke, 493 F. Supp. 2d 18, 29 (D.D.C. 2007); see also Reed v. Agilent Techs., Inc., 174 F. Supp. 2d 176, 185-86 (D. Del. 2001) ("Merely producing anecdotal evidence regarding the aspirational purpose of an employer's diversity policy, and its intent to ameliorate any underutilization of certain groups, is not sufficient."). However, evidence that such policy was "actually relied upon" in taking a specific employment

action may support a finding of unlawful discrimination. Reed, 174 F. Supp. 2d at 186; see also Humphries v. Pulaski Cty. Special Sch. Dist., 580 F.3d 688, (8th Cir. 2009) (joining several of its sister circuits, including the United States Court of Appeals for the Fourth Circuit, in concluding that "evidence that an employer followed an affirmative action plan in taking a challenged adverse employment action may constitute direct evidence of unlawful discrimination") (citing Brown v. McLean, 159 F.3d 898, 904 (4th Cir. 1998)); Footland v. Daley, No. 00-1571, 2000 U.S. App. LEXIS 26632, at *4 (4th Cir. Oct. 23, 2000) (affirming summary judgment for the employer where there was no evidence supporting the plaintiff's allegation that an adverse employment decision was based on a diversity policy favoring the hiring and/or promotion of minority females over white males).

In this case, which is only at the pleading stage, Weinerth does not rely on the mere existence of a diversity policy to support her discrimination claims. Instead, she alleges that the School Board approved Dr. Talley's policy of promoting employees based on immutable characteristics such as race, sex, and age, and that such policy actually played a role in the decision to remove her from the position of principal at MHS. Weinerth further alleges that she was replaced by a younger, black male, even though he was not qualified for the position and had failed to perform satisfactorily in the past. Thus, while the School Board may be correct in arguing that a goal of increasing diversity within a school system's teaching and administrative staff is legitimate and lawful, such argument does not warrant dismissal of Weinerth's claims of discrimination under Rule 12(b)(6).

**B.**

Relying on the Supreme Court's decisions in Twombly and Iqbal, the School Board also argues that Weinerth has failed to state a plausible claim for discrimination under Title VII or the ADEA. The School Board contends that Weinerth's claims of sex and age discrimination are particularly lacking in "substance," and that her amended complaint "fails to adequately plead that she was meeting legitimate employer expectations or that she was treated differently from those similarly situated." Def.'s Reply Br. 4, ECF No. 40.

Before addressing these contentions, the court notes that the Fourth Circuit has made clear that the pleading standards established in Twombly and Iqbal apply to claims of discrimination. See Woods v. City of Greensboro, 855 F.3d 639, 647-48 (4th Cir. 2017) (citing McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 584 (4th Cir. 2015)). Although a plaintiff is "not required to 'plead facts establishing a prima facie case of discrimination to survive a motion to dismiss,'" she is "nonetheless 'required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute in compliance with Iqbal.'" Id. at 648 (alteration in original) (quoting McCleary-Evans, 780 F.3d at 585). Thus, the question at this stage of the proceedings is whether the plaintiff "has offered sufficient factual allegations to support a plausible claim" under Title VII or the ADEA. Id.

In McCleary-Evans, the plaintiff, an African-American woman, claimed that a state agency refused to hire her for two positions for which she applied because of her race and sex, in violation of Title VII. McCleary-Evans, 780 F.3d at 583. In support of her claims, the plaintiff asserted that the agency was "biased" and had "'predetermined'" that it would select white applicants to fill the positions. Id. Her complaint, however, "did not include any

9

allegations regarding the qualifications or suitability of the persons hired to fill the two positions." Id. at 584. A majority of the panel found that the plaintiff's allegations of bias were "simply too conclusory," and that the plaintiff could "only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions." Id. at 585-86. Consequently, the Court concluded that the plaintiff's complaint "'stop[ped] short of the line between possibility and plausibility of entitlement to relief'" and was therefore subject to dismissal under Rule 12(b)(6). Id. at 586 (quoting Iqbal, 556 U.S. at 678-79).

Unlike the plaintiff in McCleary-Evans, Weinerth has done more than make conclusory assertions of discrimination. Her amended complaint contains sufficient factual allegations to support a reasonable inference that the employment decision at issue was motivated by her race, sex, and age. In particular, Weinerth alleges that Dr. Talley and the School Board expressed the belief that a more diverse staff, which looked more like the student body, was necessary for student success, and that they implemented a personnel policy that put race, sex, and age above competence and work ethic. Weinerth also alleges that, in reliance on such policy, Dr. Talley and the School Board removed her from her position of principal at MHS, where the majority of students were young, black males, even though she was performing her duties at a level equal to or exceeding their legitimate expectations. Weinerth further alleges that she was replaced by Dixon, a younger, black male, even though he had previously failed to perform the duties required of the position in a competent manner. The court is convinced that the amended complaint contains sufficient factual allegations, accepted as true, to survive a motion to dismiss. While some of the statements attributed to Dr. Talley and Victor Correa

suggest that race may have played a more significant role in the employment decision, the court concludes that Weinerth has adequately pled claims for discrimination based on race, sex, and age. See, e.g., Georges v. Dominion Payroll Servs., LLC, No. 3:16CV00777, 2017 U.S. Dist. LEXIS 136277, at *11 (E.D. Va. Aug. 24, 2017) (holding that the plaintiff stated a plausible claim for age discrimination where she alleged that she was replaced by a younger, less-experienced person); Kirby v. Donahue, No. 0:14CV00270, 2015 U.S. Dist. LEXIS 89559, at *31 (D. Minn. July 10, 2015) (emphasizing that, unlike the plaintiff in McCleary-Evans, "Plaintiff also has alleged that a male with lesser qualifications was ultimately chosen for the position" for which she was qualified).

The School Board's remaining arguments to the contrary do not undermine the court's conclusion. The School Board contends that Weinerth's "own allegations show she was insubordinate to Dr. Talley or failed to respond appropriately to a simple question from him" on July 22, 2016, and that Weinerth's "own allegations show Mr. Dixon had more relevant experience to serve as principal of the high school." Def.'s Br. Supp. Mot. Dismiss 13-14. The problem with these arguments is that they require the court to view the factual allegations in the light most favorable to the School Board, which is not appropriate at this stage of the proceedings. As explained above, the court must construe the amended complaint in the light most favorable to the plaintiff. See, e.g., Covey v. Assessor of Ohio Cty., 777 F.3d 186, 194 (4th Cir. 2015) (holding that the district court improperly ignored this "familiar Rule 12(b)(6) standard"). When viewed in this manner, the amended complaint contains enough facts for the court to reasonably infer that Weinerth performed satisfactorily during her tenure as

principal, that she was more qualified and better suited for the position than Dixon, and that she was nonetheless replaced because of her race, sex, and age.

IV.

For these reasons, Weinerth's amended complaint states plausible claims of race and sex discrimination under Title VII and a plausible claim of age discrimination under the ADEA. Accordingly, the School Board's motion to dismiss (ECF No. 29) is **DENIED**. An appropriate Order will be entered.

Entered: 06-06-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge